**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiffs,
*Kevin Keen and Micah Scrogginthorpe*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN KEEN and MICAH SCROGGINTHORPE, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BETTER DEBT SOLUTIONS, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq*.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Kevin Keen and Micah Scrogginthorpe (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint, by and through their attorneys, against Defendant Better Debt Solutions, LLC ("Defendant" or "BDS") and in support thereof, state as follows:

//

//



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

## INTRODUCTION

1. Plaintiffs bring this class action against Defendant to secure redress for Defendant's multiple violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*.

2. Specifically, Defendant has violated the TCPA by initiating multiple, unsolicited telemarketing calls to Plaintiffs' cell phones using an artificial and/or prerecorded voice for the purpose of promoting its debt relief services.

3. In addition, Defendant inundated Plaintiff Kevin Keen with these unsolicited calls to his cell phone even though this residential phone has been registered on the National Do Not Call Registry ("Registry") for almost *twenty years*.

4. Plaintiff Micah Scrogginthorpe's residential phone has been registered on the Registry for over six years.

5. Through this action, Plaintiffs seek damages and injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff. Plaintiffs also seek statutory damages and any other available legal and equitable remedies.

6. Plaintiffs make these allegations on information and belief, except for those allegations that pertain to a certain Plaintiff, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

8. Unless otherwise stated, all conduct engaged in by Defendant took place in the Central District of California.

9. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction as this case arises under a federal statute.

11. This Court has personal jurisdiction over the Defendant because Defendant is located in the State of California.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of events and injury giving rise to each Plaintiff's claims occurred in or originated from this District.

## PARTIES

13. Plaintiff Kevin Keen is a natural person and resident of Pennsylvania.

14. Plaintiff Kevin Keen is a "person" as that term is defined by 47 U.S.C. § 153(39).

15. Plaintiff Micah Scrogginthorpe is a natural person and resident of Texas.

16. Plaintiff Micah Scrogginthorpe is a "person" as that term is defined by 47 U.S.C. § 153(39).

17. Defendant is a domestic limited liability company with a principal street and mailing address of 2525 Main Street, #500, Irvine, California 92614.

18. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT

19. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

20. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages,

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.



KAZEROUNI LAW GROUP, APC

SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

21. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

22. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

23. As of October 16, 2013, unless the recipient has given prior express written consent,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).



KAZEROUNI LAW GROUP, APC

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.
- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do Not Call Registry.

24. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

25. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

26. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer*



KAZEROUNI LAW GROUP, APC

*Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

## FACTUAL ALLEGATIONS

27. Defendant is a professional financial institution offering personalized debt relief, management, and consolidation solutions.

28. In Defendant's overzealous attempt to market its services, however, Defendant knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls utilizing an artificial or pre-recorded message without the prior express written consent of the call recipients.

29. Through its methods, Defendant has invaded the personal privacy of Plaintiffs and members of the Classes defined below.

30. Upon information and belief, Defendant has intentionally and repeatedly violated the TCPA, and will continue to do so in violation of Plaintiffs' and the Class members rights absent judicial relief and legal redress.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF KEVIN KEEN

31. At all times relevant to this Complaint, Plaintiff Kevin Keen ("Plaintiff Keen") was assigned, and was the owner of, a cellular telephone number ending in -1008 (the "Cell" or "Cell Phone").

32. Plaintiff Keen registered the Cell Phone with the Registry on February 2, 2008.

33. Plaintiff Keen registered the Cell on the Registry to obtain solitude from unwanted telemarketing and solicitation calls.

34. Plaintiff Keen, ***himself*** and not any other person or third party, registered the Cell with the Registry.

35. To be clear, Plaintiff Keen placed his own number on the Registry as opposed to someone else placing his number on the Registry.

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

36. Plaintiff Keen is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

37. Plaintiff Keen's Cell is used solely for residential purposes.

38. Rather, the Cell is Plaintiff Keen's personal phone that he uses for personal, family, and household use.

39. Plaintiff Keen relies on his Cell Phone to communicate with friends and family.

40. Plaintiff Keen also *solely* performs domestic tasks with his Cell including sending and receiving emails as well as text messages.

41. For instance, Plaintiff Keen uses his Cell to order food deliveries.

42. Plaintiff Keen also uses his Cell to search various websites for *non-business* related hobbies and topics of interest to him.

43. Plaintiff Keen does **not** use his Cell for business transactions.

44. Plaintiff Keen's employer does **not** pay Plaintiff's phone bill.

45. Plaintiff Keen does **not** use the Cell for business or commercial purposes.

46. Plaintiff Keen's Cell Phone is **not** registered in the name of a business.

47. Before Defendant first initiated its unsolicited communications, Plaintiff Keen did **not** provide Plaintiff Keen's Cell number to Defendant through any medium.

48. Plaintiff Keen **never** formed or entered into any type of business relationship with Defendant.

49. Plaintiff Keen **never** provided Defendant with his express written consent to be contacted for marketing purposes.

50. At no point in time did Plaintiff Keen provide Defendant with his express written consent to be contacted by Defendant on his Cell Phone via an artificial voice or pre-recorded message.

51. Despite its obligations under the TCPA, Defendant placed numerous unlawful solicitation calls Plaintiff Keen on his Cell Phone.

52. Specifically, Plaintiff Keen started receiving numerous telephone calls

from various phone numbers that he did not recognize starting in August of 2026.

53. Plaintiff Keen received these telephone calls several times a day.

54. Each of these calls began with a pre-recorded message stating that Plaintiff Keen had been pre-approved for a loan.

55. After several weeks of receiving these telephone calls, Plaintiff Keen decided to answer one of the phone calls simply to find out the identity of the caller.

56. At the outset of the call, Plaintiff Keen was greeted by a pre-recorded message, and then the call was forwarded to a live person.

57. Once connected with a live person, the live agent gathered personal information about Plaintiff Keen to conduct a soft credit check.

58. Plaintiff Keen then asked the live agent to send Plaintiff Keen an email identifying themselves.

59. Specifically, on August 22, 2026, Plaintiff Keen spoke to a Mr. David Ives, a Sr. Advisor with Defendant.

60. After the phone call, Plaintiff Keen received an email from David Ives, instructing Plaintiff Keen to save his direct phone number, "for I will be your point person moving forward."

61. In response, on August 24, 2026, Plaintiff Keen sent David Ives an email stating that he was not interested in BDS' products and/or services and requested that his phone number be placed on BDS' do-not-call list.

62. Plaintiff Keen also asked for a copy of BDS' do-not-call policy to be emailed to him.

63. Plaintiff Keen never received a response to that email and never received BDS' do-not-call policy.

64. On August 25, 2026, Plaintiff Keen's prior counsel sent BDS an email, indicating that Plaintiff Keen had not given BDS consent to contact Plaintiff Keen and that Plaintiff Keen revoked any consent to be contacted by BDS.

65. The August 25, 2026 email also requested that BDS forward any



KAZEROUNI LAW GROUP, APC

documents evidencing any purported consent by Plaintiff Keen to be contacted by BDS.

66. Plaintiff Keen's prior counsel never received a response to the August 25, 2026 email.

67. Again, on August 26, 2026, Plaintiff Keen received a phone call from Eric Macias, a Senior Debt Advisor with BDS.

68. After the phone call, Plaintiff Keen received an email from Eric Macias, instructing Plaintiff Keen to save his direct phone number, "for I will be your point person moving forward."

69. In response, Plaintiff Keen immediately sent Eric Macias an email stating that he was not interested in BDS' products and/or services and requested that his phone number be placed on BDS' do-not-call list.

70. Plaintiff Keen also asked for a copy of BDS' do-not call policy to be emailed to him.

71. Plaintiff Keen never received a response to that email and never received BDS' do-not-call policy.

72. Plaintiff Keen received a second phone call on August 26, 2026, this time from Will Oloth, a Sr. Advisor with BDS.

73. After the phone call, Plaintiff Keen received an email from Will Okoth, congratulating Plaintiff Keen on being pre-approved for a loan with BDS.

74. In response, Plaintiff Keen immediately sent Will Okoth an email stating that he was not interested in BDS' products and/or services and requested that his phone number be placed on BDS' do-not-call list.

75. Plaintiff Keen also asked for a copy of BDS' do-not-call policy to be emailed to him.

76. Plaintiff Keen never received a response to that email and never received BDS' do-not-call policy.

77. On September 14, 2026, Plaintiff Keen received a phone call from



KAZEROUNI LAW GROUP, APC

Summer Lopez, a Sr. Advisor with BDS.

78. After the phone call, Plaintiff Keen received an email from Summer Lopez, congratulating Plaintiff Keen on being pre-approved for a loan with BDS.

79. In response, Plaintiff Keen immediately sent Summer Lopez an email stating that he was not interested in BDS' products and/or services and requested that his phone number be placed on BDS' do-not-call list.

80. Plaintiff Keen also asked for a copy of BDS' do-not-call policy to be emailed to him.

81. Plaintiff Keen never received a response to that email and never received BDS' do-not-call policy.

82. Defendant placed dozens of unsolicited marketing phone calls to Plaintiff Keen prior to the filing of the Complaint and has not made any efforts to cease communications.

83. Plaintiff Keen reserves the right to allege violations for all phone calls that he receives after the filing of the Complaint.

84. Each of Defendant's phone calls were made using a prerecorded message as prohibited by 47 U.S.C § 227(b)(1).

85. When Plaintiff Keen listened to the message at the outset of the call, Plaintiff Keen was able to determine that it was a prerecorded message and that he was not speaking to a live representative. *See, Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

86. It was evident to Plaintiff Keen that the voice message he heard was an artificial or prerecorded voice because, *inter alia*: (a) the generic content of the voice message; and (b) the tone, cadence and inflection of the voice message, which sounded to the Plaintiff Keen's ears like a pre-recorded message, rather than a personal voice



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

message that was placed personally for the Plaintiff Keen by a live individual on the line.

87. Plaintiff Keen has previously received both prerecorded voice messages and regular non-prerecorded voice messages, and Plaintiff Keen is able to differentiate the characteristics and sounds of a prerecorded voice message in contrast to an ordinary voice message left by a live person.

88. Upon information and belief, and based on the Plaintiff Keen's own personal experience, the voice message received from Defendant sounded like a prerecorded voice message.

89. Defendant's phone calls to Plaintiff Keen constitute telephone solicitations because Defendant encouraged the future purchase or investment in Defendant's debt relief services.

90. Defendant placed the phone calls within this judicial district, and therefore, Defendant's violations of the TCPA occurred within this district.

91. Plaintiff Keen never provided Defendant with his express consent to be contacted.

92. Defendant's unsolicited phone calls caused Plaintiff Keen actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

93. Defendant's phone calls also inconvenienced Plaintiff Keen and caused disruption to his daily life.

94. Additionally, Defendant's phone calls took up memory on Plaintiff Keen's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes because of the phone's memory being taken up.

**<u>FACTUAL ALLEGATIONS AS TO PLAINTIFF MICAH SCROGGINTHORPE</u>**

95. At all times relevant to this Complaint, Plaintiff Micah Scrogginthorpe

KAZEROUNI LAW GROUP, APC

("Plaintiff Scrogginthorpe") was assigned, and was the owner of, a cellular telephone number ending in -3250 (the "Cell" or "Cell Phone").

96. Plaintiff Scrogginthorpe registered the Cell Phone with the Registry on January 1, 2020.

97. Plaintiff Scrogginthorpe registered the Cell on the Registry to obtain solitude from unwanted telemarketing and solicitation calls.

98. Plaintiff Scrogginthorpe, ***himself*** and not any other person or third party, registered the Cell with the Registry.

99. To be clear, Plaintiff Scrogginthorpe placed his own number on the Registry as opposed to someone else placing his number on the Registry.

100. Plaintiff Scrogginthorpe is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

101. Plaintiff Scrogginthorpe's Cell is used solely for residential purposes.

102. Rather, the Cell is Plaintiff Scrogginthorpe's personal phone that he uses for personal, family, and household use.

103. Plaintiff Scrogginthorpe relies on his Cell Phone to communicate with friends and family.

104. Plaintiff Scrogginthorpe also *solely* performs domestic tasks with his Cell including sending and receiving emails as well as text messages.

105. For instance, Plaintiff Scrogginthorpe uses his Cell to order food deliveries.

106. Plaintiff Scrogginthorpe also uses his Cell to search various websites for *non-business* related hobbies and topics of interest to him.

107. Plaintiff Scrogginthorpe does **not** use his Cell for business transactions.

108. Plaintiff Scrogginthorpe's employer does **not** pay Plaintiff Scrogginthorpe's phone bill.

109. Plaintiff Scrogginthorpe does **not** use the Cell for business or commercial purposes.

110. Plaintiff Scrogginthorpe's Cell Phone is **not** registered in the name of a business.

111. Before Defendant first initiated its unsolicited communications, Plaintiff Scrogginthorpe did **not** provide Plaintiff Scrogginthorpe's Cell number to Defendant through any medium.

112. Plaintiff Scrogginthorpe **never** formed or entered into any type of business relationship with Defendant.

113. Plaintiff Scrogginthorpe **never** provided Defendant with his express written consent to be contacted for marketing purposes.

114. At no point in time did Plaintiff Scrogginthorpe provide Defendant with his express written consent to be contacted by Defendant on his Cell Phone via an artificial voice or pre-recorded message.

115. Despite its obligations under the TCPA, Defendant placed numerous unlawful solicitation calls Plaintiff Scrogginthorpe on his Cell Phone.

116. Specifically, Plaintiff Scrogginthorpe started receiving numerous telephone calls from various phone numbers that his phone carrier's caller id identified as "Lendvia Loan Application" starting in August of 2026.

117. Upon information and belief, "Lendvia" is a company owned and operated by Defendant.

118. Plaintiff Scrogginthorpe received these telephone calls several times a day.

119. Plaintiff Scrogginthorpe did not answer any of these calls.

120. However, Plaintiff Scrogginthorpe received a voicemail after every call.

121. These voicemails each began with a prerecorded message where one of Defendant's agents identified themselves by name and stating that they were calling "with BDS."

122. In each of these voicemails, Defendant's agent stating that they were "calling about [Plaintiff Scrogginthorpe's] loan application."

123. However, Plaintiff Scrogginthorpe has never initiated a loan application with Defendant and has never contacted Defendant for any reason.

124. Defendant placed dozens of unsolicited marketing phone calls to Plaintiff Scrogginthorpe prior to the filing of the Complaint and has not made any efforts to cease communications.

125. Defendant's calls were so numerous and disruptive to Plaintiff Scrogginthorpe that he was forced to add the Verizon "Neighborhood Filter."

126. Verizon's "Neighborhood Filter" allows users to view the calls that have been blocked by the feature and Plaintiff Scrogginthorpe continued to receive calls from Defendant even after he added the feature.

127. Specifically, Plaintiff Scrogginthorpe received unsolicited marketing phone calls from Defendant on the following dates:

- On August 7, 2026 from the phone number (430) 213-5391
- Twice on August 10, 2026 from the phone number (430) 213-5391
- On August 11, 2026 from the phone number (430) 213-5391
- On August 12, 2026 from the phone number (940) 532-5422
- On August 13, 2026 from the phone number
- Twice on August 14, 2026 from the phone number
- Twice on August 17, 2026 from the phone number
- Twice on August 18, 2026 from the phone number
- Twice on August 19, 2026 from the phone number
- Twice on August 20, 2026 from the phone number
- Twice on August 21, 2026 from the phone number
- On August 22, 2026 from the phone number
- Twice on August 24, 2026 from the phone number
- Twice on August 25, 2026 from the phone number
- Twice on August 26, 2026 from the phone number
- Twice on August 27, 2026 from the phone number



KAZEROUNI LAW GROUP, APC

- Twice on August 28, 2026 from the phone number
- On August 29, 2026 from the phone number
- Twice on August 31, 2026 from the phone number
- Twice on September 1, 2026 from the phone number
- Twice on September 2, 2026 from the phone number
- Twice on September 3, 2026 from the phone number
- Twice on September 4, 2026 from the phone number

128. To stop this harassment, Plaintiff Scrogginthorpe even sent Defendant a formal written cease and desist letter to the address on Defendant's website.

129. Despite confirmation that the letter was delivered, the Defendant continued its unsolicited calls.

130. Plaintiff Scrogginthorpe reserves the right to allege violations for all phone calls that he receives after the filing of the Complaint.

131. Each of Defendant's phone calls were made using a prerecorded message as prohibited by 47 U.S.C § 227(b)(1).

132. When Plaintiff Scrogginthorpe listened to the message at the outset of the voicemails, Plaintiff Scrogginthorpe was able to determine that it was a prerecorded message and that a live representative was not speaking. *See, Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

133. It was evident to Plaintiff Scrogginthorpe that the voice message he heard was an artificial or prerecorded voice because, *inter alia*: (a) the generic content of the voice message; and (b) the tone, cadence and inflection of the voice message, which sounded to the Plaintiff Scrogginthorpe's ears like a pre-recorded message, rather than a personal voice message that was placed personally for the Plaintiff Scrogginthorpe by a live individual on the line.

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

134. Plaintiff Scrogginthorpe has previously received both prerecorded voice messages and regular non-prerecorded voice messages, and Plaintiff Scrogginthorpe is able to differentiate the characteristics and sounds of a prerecorded voice message in contrast to an ordinary voice message left by a live person.

135. Upon information and belief, and based on the Plaintiff Scrogginthorpe's own personal experience, the voice message received from Defendant sounded like a prerecorded voice message.

136. Defendant's phone calls to Plaintiff Scrogginthorpe constitute telephone solicitations because Defendant encouraged the future purchase or investment in Defendant's debt relief services.

137. Defendant placed the phone calls within this judicial district, and therefore, Defendant's violations of the TCPA occurred within this district.

138. Plaintiff Scrogginthorpe never provided Defendant with his express consent to be contacted.

139. Defendant's unsolicited phone calls caused Plaintiff Scrogginthorpe actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

140. Defendant's phone calls also inconvenienced Plaintiff Scrogginthorpe and caused disruption to his daily life.

141. Additionally, Defendant's phone calls took up memory on Plaintiff Scrogginthorpe's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes because of the phone's memory being taken up.

## CLASS ACTION ALLEGATIONS

142. Plaintiffs bring this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Classes, which are defined as follows:

Prerecorded Voice Class

KAZEROUNI LAW GROUP, APC

> All persons within the United States who received any telephone call(s) from Defendant or its agent(s) to said person's cellular telephone made through the use of an artificial or prerecorded voice within the four years prior to the filling of the Complaint.

<u>DNC Class</u>

> All persons within the United States (1) registered on the National Do Not Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint

<u>IDNC Class</u>

> All persons within the United States: (1) who received a telephone solicitation; (2) made by or on behalf of Defendant; (3) for the purpose of promoting Defendant's goods or services, (4) after making a do-not-call request to Defendant; (5) within the four years prior to the filing of the Complaint.

143. Excluded from all Classes are Defendant, its officers and directors, members of its immediate families and its legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

144. Plaintiffs reserve the right to redefine the Classes and to add subclasses as appropriate based on discovery and specific theories of liability.

145. Further, Plaintiffs and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiffs and the Class Members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiffs and the Class Members who opted out from any communication from Defendant, thereby causing annoyance to Plaintiffs and the Class and also invading the privacy of Plaintiffs and the Classes. Plaintiffs and the Class

KAZEROUNI LAW GROUP, APC

Members were damaged thereby.

146. Numerosity: At this time, Plaintiffs do not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized pre-recorded voice calls made to numerous telephone numbers. Plaintiffs believe, at a minimum, there are greater than forty (40) Class Members. Plaintiffs believe that the Classes are so numerous that joinder of all members of the Classes are impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

147. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's phone call logs and call records.

148. Members of the Classes may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

149. Ascertainability: The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria. In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

150. Typicality: As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiffs are asserting claims that are typical of the Classes. Plaintiffs will fairly and

adequately represent and protect the interests of the Classes in that Plaintiffs have no interests antagonistic to any member of the Classes.

151. Plaintiffs and members of the Classes each received at least one telephonic sales call, advertising Defendant's services, without prior express written consent, which Defendant made or caused to be made to Plaintiffs and the members of the Classes.

152. Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs have had to suffer the burden and invasion of privacy of receiving unsolicited phone calls to Plaintiffs' cellular telephone from Defendant while Defendant had no express written consent to contact Plaintiffs. Thus, Plaintiffs' injuries are typical to Class Members.

153. Plaintiffs' claims, and the claims of the members of the Classes, originate from the same conduct, practice and procedure on the part of Defendant.

154. Plaintiffs' claims are based on the same theories, as are the claims of the members of the Classes.

155. Plaintiffs and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiffs and Class Members by illegally placing unsolicited calls, including calls utilizing artificial or prerecorded voice messages, to their cellular phones without prior express consent. Plaintiffs and the Class Members suffered injuries, including invasion of privacy, and were damaged thereby.

156. Adequacy: Plaintiffs are qualified to, and will fairly and adequately protect the interests of the members of the Classes with whom Plaintiffs are similarly situated, as demonstrated herein. Plaintiffs acknowledge that Plaintiffs have an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes. Plaintiffs will vigorously pursue the claims of the members of the Classes. Plaintiffs have retained counsel



KAZEROUNI LAW GROUP, APC

experienced and competent in class action litigation. Plaintiffs' attorneys, the proposed Class Counsel, are well-versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA. Plaintiffs' counsel will assert, protect and otherwise represent the members of the Class. Plaintiffs have incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

157. Predominance: The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiffs and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

158. Commonality: There are common questions of law and fact as to all members of the Classes, including but not limited to the following:

- What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing phone calls;
- Whether Defendant initiated unsolicited phone calls, including calls utilizing an artificial or pre-recorded voice, to Plaintiffs and Class members;
- How Defendant obtained the numbers of Plaintiffs and Class members;
- Whether Defendant can meet its burden of showing that it had prior express written consent to conduct such phone calls;
- Whether Defendant willfully or knowingly violated the TCPA;
- Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and
- Whether Plaintiffs and the members of the Classes are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;



KAZEROUNI LAW GROUP, APC

- Whether Plaintiffs and members of the Classes are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and
- Whether Plaintiffs and the Classes are entitled to any other relief.

99. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.
- The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.
- The damages suffered by each individual member of the Classes may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.
- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiffs' claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.



KAZEROUNI LAW GROUP, APC

- There will be little difficulty in the management of this action as a class action.

100. Class-Wide Injunctive Relief: Moreover, class certification is warranted because Defendant has acted on grounds generally applicable to Plaintiffs and members of Classes, thereby making appropriate final injunctive relief with respect to Plaintiffs and Class Members as a whole. Plaintiffs seek injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA of statutory damages and to be free from unwanted phone calls.

101. Defendant has acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

102. Plaintiffs and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein.

103. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

104. Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

**105.** This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)

### [ON BEHALF OF PLAINTIFFS AND THE DNC CLASS]

159. Plaintiffs re-allege and incorporate all preceding paragraphs of the Complaint as if fully set forth herein.

160. Pursuant to 47 U.S.C. § 227(c)(5), a person who has received more than one telephone call or text message within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

161. Defendant—or third parties directed by Defendant—made non-emergency telephonic solicitations to the cellular telephone of Plaintiffs and the members of the DNC Class.

162. These phone calls were made without regard to Plaintiffs and the DNC Class members' registration on the National Do Not Call Registry.

163. Therefore, Defendant has violated § 227(c) of the TCPA by making, or directing a third party to make, non-emergency telephonic solicitations to Plaintiffs and the DNC class members without their prior express written consent.

164. Upon information and belief, at all relevant times, Defendant failed to

establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the national Do-Not Call provisions in 47 C.F.R. §§ 64.1200(c)-(d).

165. Defendant sent unsolicited and unauthorized text messages and/or phone calls to the cellular telephone of Plaintiffs and the DNC class members' residential telephone numbers, which had previously been placed on the National Do Not Call Registry, for the purpose of marketing goods and/or services to Plaintiffs and the DNC class members.

166. Defendant's phone calls caused Plaintiffs and the DNC class members actual harm including, but not limited to, invasion of privacy, aggravation, inconvenience, nuisance and disruption of daily life, reduction in cellular telephone battery life, data, and loss of use.

167. Plaintiffs' Request for Relief includes a request for damages for each phone call placed by Defendant to Plaintiffs and the DNC class members' residential numbers on the National Do-Not Call Registry, as authorized by statute in 47 U.S.C. § 227, *et seq*. The statutory damages were set by Congress and specifically redress the damages suffered by Plaintiffs and the other members of the DNC Class.

168. Defendant knew that it did not have prior express consent to place these phone calls since Plaintiffs sent Defendant repeated revocations. Thus, the violations were willful or knowing.

169. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiffs and each of the DNC class members are entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500.00 in statutory damages for willful violations. Plaintiffs and the members of the DNC class are entitled to an injunction against future solicitations.

//

//

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE TCPA, 47 U.S.C. §§ 227, ET SEQ.

### [ON BEHALF OF PLAINTIFFS AND THE IDNC CLASS]

170. Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

171. As alleged with specificity herein, Plaintiffs made requests to Defendant not to receive telemarketing.

172. As alleged with specificity herein, Defendant failed to honor Plaintiffs' requests.

173. Based on the foregoing, Defendant has not instituted procedures for maintaining a list of persons, including but not limited to Plaintiffs, who requested not to receive telemarketing, pursuant to 47 C.F.R. § 64.1200(d).

174. Because Plaintiffs received more than one telemarketing call in a 12-month period made by Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

175. As a result of Defendant's negligent violations of 47 U.S.C. § 227 (c), Plaintiffs and each member of the IDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

176. Plaintiffs and each member of the IDNC Class are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violations of 47 U.S.C. §§ 227 (c), pursuant to 47 U.S.C. § 227(c)(5).

177. Plaintiffs and the IDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE TCPA, 47 U.S.C. §§ 227, ET SEQ.

### [ON BEHALF OF PLAINTIFFS AND THE PRE-RECORDED VOICE CLASS]

106. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

107. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, et seq.

108. Defendant and/or their agents placed at several unauthorized calls to Plaintiffs and the members of the Pre-Recorded Voice Class's cellular telephones using an artificial and/or prerecorded voice without Plaintiffs and the members of the Pre-Recorded Voice Class's prior express consent.

109. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiffs and the other members of the Pre-Recorded Voice Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations.

110. As a result of Defendant's violations of the TCPA, Plaintiffs are entitled to and seek injunctive relief prohibiting such conduct by Defendant violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

111. Plaintiffs also seek an award of attorneys' fees and costs on behalf of Plaintiff and the Pre-Recorded Voice Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

- An order certifying this matter as a class action with Plaintiffs as Class Representatives, and designating Plaintiffs' counsel as Class Counsel;
- Injunctive relief prohibiting Defendant from engaging in such conduct in the future;
- Statutory damages of $500.00 for Plaintiffs and each member the Pre-Recorded Voice Class for each and every one of Defendant's negligent violations;
- Statutory damages of $500.00 for Plaintiffs and each member the DNC Class for each and every one of Defendant's negligent violations;



KAZEROUNI LAW GROUP, APC

- Statutory damages of $500.00 for Plaintiffs and each member the IDNC Class for each and every one of Defendant's negligent violations;
- Statutory damages of $1,500.00 for Plaintiffs and each member of the Pre-Recorded Voice Class for each and every one of Defendant's willful or knowing violations;
- Statutory damages of $1,500.00 for Plaintiffs and each member of the DNC Class for each and every one of Defendant's willful or knowing violations;
- Statutory damages of $1,500.00 for Plaintiffs and each member of the IDNC Class for each and every one of Defendant's willful or knowing violations;
- A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;
- An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

**TRIAL BY JURY**

178. Plaintiffs are entitled to, and demand, a trial by jury on all issues so triable.

Dated: November 25, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *<u>/s/ David McGlothlin</u>*
David McGlothlin, Esq.
*Attorneys for Plaintiffs*

KAZEROUNI LAW GROUP, APC